UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.D.N.,<br><br>  Petitioner,<br><br>  v.<br><br>PAM BONDI, et al.,<br><br>  Respondents. | No. 1:25-cv-01587-DAD-CKD<br><br>ORDER GRANTING *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION TO PROCEED UNDER PSEUDONYM<br><br>(Doc. Nos. 2, 3) |

This matter is before the court on petitioner's *ex parte* motion for a temporary restraining order and petitioner's motion to proceed under pseudonym filed on November 18, 2025. (Doc. Nos. 2, 3.) For the reasons explained below, the court will grant petitioner's motions.

**BACKGROUND**

On November 18, 2025, petitioner N.D.N. filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention by United States Immigration and Customs Enforcement ("ICE"). (Doc. No. 1.) Petitioner asserts the following five claims in that petition: (1) unlawful re-detention constituting an arbitrary and capricious agency action in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(a)(2)(A); (2) violation of the procedures for revocation of release set out in 8 C.F.R. § 241.13(i)(3); (3) violation of the Immigration and Nationality Act of 1952 ("INA"); (4) indefinite detention in violation of the

1

1  Fifth Amendment; and (5) failure to provide adequate procedures regarding third country removal
2  in violation of the Fifth Amendment. (*Id.* at ¶¶ 115–43.) In support of the pending motion for
3  temporary restraining order, petitioner presents evidence of the following.

4  Petitioner was born in Vietnam before entering the United States in 1992, around the age
5  of 16. (Doc. No. 1-1 at ¶¶ 2, 3.) His family fled Vietnam due to holding anti-communist political
6  views, for which petitioner's father was imprisoned and tortured for several years. (*id.* at ¶ 2.) In
7  1997, petitioner was convicted of first degree robbery in violation of California Penal Code §
8  213(a)(1)(A). (*Id.* at ¶ 4.) Petitioner was thereafter sentenced and served approximately three
9  years in a California state prison. (*Id.*) Upon petitioner's release from prison, he was transferred
10 into ICE custody and on January 25, 2000, the United States Department of Homeland Security
11 ("DHS") commenced removal proceedings against petitioner. (*Id.* at ¶ 5.) On April 19, 2000, the
12 assigned immigration judge found that petitioner was "more likely than not" to be persecuted if
13 removed to Vietnam, but nevertheless denied his application for relief pursuant to the Convention
14 Against Torture, found him removable, and ordered him removed. (*Id.* at ¶ 6.) On November 16,
15 2000, the Board of Immigration Appeals affirmed the immigration judge's decision, which
16 constituted petitioner's final order of removal. (*Id.*) ICE continued to hold petitioner to
17 effectuate his removal. (*Id.* at ¶ 7.) On February 26, 2001, ICE released petitioner from custody
18 and placed him on an Order of Supervision ("OSUP") due to its inability to remove petitioner to
19 Vietnam. (*Id.* at ¶ 8.) He has since spent the past 24 years out of custody and has complied with
20 the terms of his OSUP. (*Id.*)

21 On October 15, 2025, petitioner attended his annual check-in at the San Francisco ICE
22 Field Office, where he was provided with paper forms relating to obtaining travel documents.
23 (*Id.* at ¶ 11.) On October 22, 2025, petitioner attended a follow-up appointment with his attorney
24 present and was re-detained without being provided a reason for his detention. (*Id.* at ¶ 12.)
25 Later that day, petitioner was provided with a Notice of Revocation of Release that indicated that
26 there were changed circumstances justifying his re-detention because his request for travel
27 documents was "currently under review by the Government of Vietnam" and hence his "removal
28 is now imminent." (*Id.* at ¶ 13.)

On November 18, 2025, petitioner filed the pending motion for temporary restraining order. (Doc. No. 2.) In that motion, petitioner requests that the court order his immediate release from custody and enjoin respondents from re-detaining him absent notice and a hearing before an immigration judge.[1] (*Id.* at 38.) On November 19, 2025, the court directed petitioner's counsel to serve respondents with a copy of the petition, the motion for temporary restraining order, and accompanying papers, and directed respondents to file an opposition. (Doc. No. 5.) On November 20, 2025, respondents filed their opposition to the pending motion. (Doc. No. 8.)

## LEGAL STANDARD

### A.     Motion for Temporary Restraining Order

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Ninth Circuit has also held that "[a] preliminary injunction is

---

[1] Petitioner also requests that this court order respondents "refrain from removing him to any third country without first providing him with constitutionally-compliant procedures." (Doc. No. 2 at 38.) Respondents argue that such an order is unnecessary because petitioner has not presented evidence of respondents' intent to remove him to a third country. (Doc. No. 8 at 4.) The court recognizes the concerns regarding third country removal expressed by petitioner's counsel in light of the lack of information provided by the government in response to his pending petition. Nonetheless, the court concludes that the issuance of an injunction pertaining to third country removal is not supported at this time because that issue is not presently before the court.

appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (citation omitted). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

The likelihood of success on the merits is the most important *Winter* factor. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Plaintiff bears the burden of demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that "serious questions going to the merits were raised." *All. for Wild Rockies*, 632 F.3d at 1131.

**B.     Motion to Proceed Under Pseudonym**

"[M]any federal courts, including the Ninth Circuit, have permitted parties to proceed anonymously when special circumstances justify secrecy." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000). "In this circuit, . . . parties [may] use pseudonyms in the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment.'" *Id.* at 1067–68 (quoting *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)). "[A] district court must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party." *Id.* at 1068.

The Ninth Circuit has identified three situations in which parties have been allowed to proceed under pseudonyms: "(1) when identification creates a risk of retaliatory physical or mental harm; (2) when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature; and (3) when the anonymous party is compelled to admit [his or her] intention to engage in illegal conduct, thereby risking criminal prosecution . . . ." *Id.* (citations and internal quotation marks omitted). A party requesting to proceed pseudonymously has the

burden of showing that their "need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068–69. "When a party requests Doe status, the factors to be balanced against the general presumption that parties' identities are public information, are: (1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation." *Doe v. Ayers*, 789 F.3d 944, 945 (9th Cir. 2015) (internal quotation marks, brackets, and ellipses omitted).

## DISCUSSION

**A.     Motion for Temporary Restraining Order**

      1.     <u>Likelihood of Success on the Merits</u>

           a.     *Revocation of Release*

Petitioner argues that he is likely to prevail on his claim that his revocation of release and subsequent detention were unlawful on statutory and constitutional grounds. (Doc. No. 2 at 16–33.) Specifically, petitioner contends that: (1) his redetention amounts to indefinite detention and is therefore unconstitutional and violates 8 C.F.R. § 241.13; and (2) he is entitled to greater due process prior to any redetention. (*Id.*) Respondents argue that petitioner's removal is imminent based solely on the bare assertion made in the notice of revocation of release provided to petitioner. (Doc. No. 8 at 3.)

"The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C. § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of any order of removal." *Phan v. Becerra*, No. 2:25-cv-01757-DC-JDP, 2025 WL 1993735, at *3 (E.D. Cal. July 16, 2025). "Certain noncitizens ordered removed may be detained beyond the 90-day removal period, including, *inter alia*, those who are removable under 8 U.S.C. § 1227(a)(2) for certain criminal offenses, those determined to be a risk to the community, or those unlikely to comply with the order of removal." *Vaskanyan v. Janecka*, No. 5:25-cv-01475-MRA-AS, 2025 WL 2014208, at *3 (C.D. Cal. June 25, 2025). Nevertheless, "[a] noncitizen may only be held in confinement until 'it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Vlasov v.*

5

*Bondi*, No. 25-cv-01342-AJB-MSB, 2025 WL 2258582, at *2 (S.D. Cal. Aug. 7, 2025) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001)).

"The Supreme Court read an implicit limitation into the statute in light of the Constitution's demands, holding that § 1231(a)(6) does not authorize indefinite detention and limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Hilario M.R. v. Warden, Mesa Verde Det. Ctr.*, No. 1:24-cv-00998-EPG (HC), 2025 WL 1158841, at *4 (E.D. Cal. Apr. 21, 2025) (internal quotation marks omitted) (quoting *Zadvydas*, 533 U.S. at 689). "A six-month period of detention is presumptively reasonable." *Vlasov*, 2025 WL 2258582, at *2. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

As another judge of this court has recently acknowledged:

> Upon release, a noncitizen subject to a final order of removal must comply with certain conditions of release. The revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes ICE to revoke a noncitizen's release for purposes of removal. Specifically, a noncitizen's release may be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."

*Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025). Further, when ICE revokes a non-citizen's supervised release based on a finding of changed circumstances, the court must review that finding in light of the factors set out in 8 C.F.R. § 241.13(f), which include, among other things, the reasonably foreseeable results of the government's and the non-citizen's efforts towards removal and the history of the non-citizen's efforts to comply with the order of removal. *Hoac*, 2025 WL 1993771, at *3 (citing *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. June 20, 2025) ("To the extent ICE claims that it made such a determination, the court should review that claim in light of the regulations instructing ICE on how it should make such a determination.")).

/////

1          Here, respondents have simply not met their statutory burden of demonstrating that there
2  is a significant likelihood that petitioner may be removed in the reasonably foreseeable future.  It
3  is undisputed that petitioner has not been able to be removed for the past twenty-five years,
4  during which time petitioner has been on supervised release.  (Doc. No. 1-1 at ¶¶ 8, 9.)
5  Respondents' only evidence that there are any changed circumstances whatsoever is an unsworn
6  notice wherein an unknown declarant states in conclusory fashion that the government of
7  Vietnam is considering issuance of a travel document for petitioner.  (Doc. No. 1-2 at 31.)  Even
8  if the court were to assume the truth of that conclusory statement, respondents have not shown
9  why a travel document could not previously be obtained nor why Vietnam is likely to reach a
10 different conclusion this time.  *See Hoac*, 2025 WL 1993771, at *4 (finding that the respondents
11 failed to show a significant likelihood of removal where the respondents provided no evidence as
12 to why a travel document could not previously be obtained to Vietnam nor why it was more likely
13 in that instance); *see also Chun Yat Ma v. Asher*, No. 11-cv-01797-MJP, 2012 WL 1432229, at *5
14 (W.D. Wash. Apr. 25, 2012) ("An undue delay in removal for an individual alien beyond the
15 typical removal period would naturally suggest that removal is unlikely.").  Accordingly, the
16 court concludes that petitioner has shown he is likely to prevail on his claim that his revocation of
17 release and subsequent detention was unlawful because there is no significant likelihood of
18 removal in the reasonably foreseeable future.  *See Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025
19 WL 2243616, at *7 (N.D. Cal. Aug. 6, 2025) (finding that the petitioner had offered sufficient
20 facts to show that his detention would be indefinite because there was no significant likelihood of
21 removal); *see also J.L.R.P. v. Wofford*, No. 1:25-cv-01464-KES,SKO (HC), 2025 WL 3190589,
22 at *5 (E.D. Cal. Nov. 14, 2025) ("Detention is permissible only if ICE can show that there is a
23 significant likelihood of removal in the reasonably foreseeable future (or if there was a violation
24 of the order of supervision, which respondents do not allege here).").
25            b.      *Future Revocation of Release*
26      Respondents argue that, if the court should order that petitioner be released, that his
27 request for a hearing before a neutral adjudicator before any future detention should nonetheless
28 be denied.  (Doc. No. 8 at 3–4.)  Specifically, respondents contend that, because such relief is not

1  provided for in the INA, any finding that due process required such a hearing would "improperly
2  interfere with the Executive Branch's operations." (*Id.*)

3  The court first observes that the applicable regulatory framework provides some post-
4  detention administrative process, such as an initial informal interview and, should the non-citizen
5  remain in custody following such interview, an internal records review which is to "include an
6  evaluation of any contested facts" and that is expected to occur "within approximately three
7  months after release is revoked." *See* 8 C.F.R. §§ 241.13(i)(3), 241.4(l)(3). This framework
8  provides "no opportunity to have a neutral party evaluate ICE's unilateral determination of the
9  contested facts." *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1034 (N.D. Cal. July 17,
10  2025).

11  "The Due Process Clause of the Fifth Amendment prohibits the Government from
12  depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v.*
13  *Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons
14  within the United States, including aliens, whether their presence is lawful, unlawful, temporary,
15  or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government
16  custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause
17  protects." *Id.* at 690. "Courts analyze procedural due process claims in two steps: [T]he first
18  asks whether there exists a protected liberty interest under the Due Process Clause, and the
19  second examines the procedures necessary to ensure any deprivation of that protected liberty
20  interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025
21  WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S.
22  454, 460 (1989)). Here, it is apparent that petitioner has a liberty interest in his continued release
23  from immigration detention. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969–70 (N.D. Cal.
24  2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too
25  does Ortega have a liberty interest in remaining out of custody on bond. . . . Given the civil
26  context, his liberty interest is arguably greater than the interest of parolees in *Morrissey*.") (citing
27  *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)); *see also Guillermo M.R.*, 791 F. Supp. 3d at
28  /////

8

1030 ("Petitioner has a liberty interest in his continued release on bond."). Accordingly, the court considers what additional procedures, if any, are required to protect that liberty interest.

"Due process 'is a flexible concept that varies with the particular situation.'" *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *6 (E.D. Cal. July 11, 2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). The Supreme Court identified three factors that the court must consider in determining what process is constitutionally required: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Eldridge* factor, the court finds that petitioner has a strong private interest in his continued release. As noted above, petitioner was released in 2001 prior to being detained in 2025, during which time he was employed and living with his family. (Doc. No. 1-1 at ¶ 9.) The length of time he was on supervised release, as well as petitioner's ties to his community, strengthen petitioner' interest in his continued release. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Moreover, the actions of the Government in allowing Petitioner to remain in the community for over five years strengthen Petitioner's liberty interest. Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause."); *see also Garcia*, 2025 WL 1927596, at *4 ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

As to the second *Eldridge* factor, petitioner maintains that without the additional protection of a pre-detention hearing before an immigration judge, there is a high risk of erroneous deprivation of his important liberty interest. (Doc. No. 2 at 31–33.) Petitioner argues that ICE can "simply re-detain him at any point" based on the procedures described in 8 C.F.R. §§ 241.13, 241.4. (*Id.*) "The lack of any neutral review [pursuant to 8 C.F.R. § 241.4] creates a heightened risk of deprivation for Petitioner." *Guillermo M.R.*, 791 F. Supp. 3d at 1034; *see also*

9

1  *Bonnar*, 415 F. Supp. 3d at 970 (finding that the government's position that a material change of
2  circumstances had occurred justifying re-detaining the petitioner increased the risk of erroneous
3  deprivation without a hearing before a neutral adjudicator); *Vargas v. Jennings*, No. 20-cv-05785-
4  PJH, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020) (same).  Accordingly, "absent evidence
5  of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process[.]"  *Guillermo*
6  *M.R.*, 791 F. Supp. 3d at 1036; *see also Diaz v. Kaiser*, No. 3:25-cv-05071-BLF, 2025 WL
7  1676854, at *3 (N.D. Cal. June 14, 2025) (finding that the risk of erroneous deprivation of the
8  petitioner's liberty interest in remaining out of custody would be lessened by a pre-detention
9  hearing before an immigration judge).

10         As to the third *Eldridge* factor, petitioner argues that the government's interest in
11 detaining him without a hearing is minimal.  (Doc. No. 2 at 30–31.)  Respondents do not make
12 any argument in opposition.  (Doc. No. 8.)  The court finds, as several other courts have, that the
13 costs associated with providing petitioner with a pre-detention hearing prior to revocation of
14 release are low and that the government's interest in not providing such a hearing is also low.  *See*
15 *Guillermo M.R.*, 791 F. Supp. 3d at 1036–37 ("Respondents characterized Petitioner's requested
16 relief as an 'unprecedented' pre-arrest bond hearing[.]  . . .  However, the concept that an
17 individual who is not subject to detention may request custody redetermination from an IJ is not
18 novel. . . .  Courts in this district have also regularly required pre-arrest hearings pursuant to the
19 due process clause."); *see also Garcia*, 2025 WL 1927596, at *5 ("[T]he Court finds the
20 Respondents' interest in placing Petitioner in detention without a hearing is low.  The effort and
21 cost required to provide Petitioner with procedural safeguards is minimal and indeed was
22 previously provided in his case."); *J.L.R.P.*, 2025 WL 3190589, at *10 ("[T]he government's
23 interest in detaining petitioner without a hearing is 'low.'").

24         Because petitioner has demonstrated that he is likely to succeed in showing that he has a
25 strong liberty interest in remaining out of custody, that the risk of erroneous deprivation will be
26 meaningfully reduced by requiring a pre-detention hearing before an immigration judge, and that
27 the governmental burden in providing such procedure is quite minimal, the court concludes that
28 consideration of the *Eldridge* factors weighs in favor of granting petitioner's requested relief.

### 2. Irreparable Harm

Petitioner argues that he will suffer irreparable harm from her continued detention and deprivation of his constitutional rights to due process in the absence of the granting of the requested injunctive relief. (Doc. No. 2 at 35–36.) "[U]nlawful detention certainly constitutes extreme or very serious damage, and that damage is not compensable in damages." *Hernandez*, 872 F.3d at 999 (internal quotation marks omitted). Likewise, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Above, the court has concluded above that petitioner will likely succeed on the claim that his continued detention is unlawful. The court therefore also concludes that petitioner has demonstrated irreparable harm as to that detention and that consideration of this *Winter* factor favors granting petitioner's motion for temporary restraining order.

### 3. Balance of Equities and Public Interest

Petitioner argues that the last two *Winter* factors—the balance of equities and public interest—favor the granting of her motion for temporary restraining order. (Doc. No. 2 at 37–38.) She contends that a violation of constitutional rights through indefinite detention would cause her immense harm whereas the burden on the government in releasing her would be minimal. (*Id.*)

The consideration of the balance of equities and the public interest in an injunction merge "[w]hen the government is a party[.]" *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, the public has a strong interest in upholding procedural protections against unlawful detention." *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *6 (E.D. Cal. July 16, 2025) (internal quotation marks omitted) (quoting *Vargas v. Jennings*, 2020 WL 5074312, at *4). Petitioner has demonstrated that he will likely succeed on the merits of his unlawful detention claim for the reasons explained above. Therefore, the court concludes that consideration of the last two *Winter* factors also favor granting petitioner's motion for temporary restraining order, and the court will grant petitioner's motion for temporary restraining order.

### B. Motion to Proceed Under Pseudonym

Petitioner moves to proceed under pseudonym in this action due to his fear of retaliation from the government of Vietnam. (Doc. No. 3.) In particular, petitioner argues that, if his name became known, he "may be subjected to harassment and persecution if forced to return to Vietnam" particularly in light of his previous application for asylum when he fled Vietnam. (*Id.* at 2, 4.)

"The normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010). However, the court may "conceal[] parties' identities in order to protect them from retaliation by third parties and also to protect nonparties from reprisals." *Does I thru XXIII v. Advanced Textile*, 214 F.3d 1058, 1067 (9th Cir. 2000). "[A] party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068. Where "pseudonyms are used to shield the anonymous party from retaliation, the district court should determine need for anonymity by evaluating the following factors: (1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation." *Id.* (citations omitted).

Petitioner, as noted above, had sought relief pursuant to the Convention Against Torture and was found by an immigration judge to "more likely than not" face persecution if removed to Vietnam. The court therefore finds petitioner's fear of persecution and retaliation supported and reasonable. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1095–96 (E.D. Cal. 2025) (finding that the petitioner, who was seeking withholding of removal through an asylum application, reasonably feared political persecution and that proceeding under a pseudonym was justified). Moreover, the public interest in petitioner's identity in this case is minimal and outweighed by petitioner's present need for anonymity. *Id.* The court will therefore grant petitioner's motion to proceed under pseudonym at this stage in the litigation, without prejudice to respondents filing a future motion to revoke such protection.

/////

**CONCLUSION**

For the reasons above,

1. Petitioner's motion for a temporary restraining order (Doc. No. 2) is GRANTED in part as follows:

    a. Respondents are ORDERED to immediately release petitioner from respondents' custody with the same conditions he was subject to immediately prior to her detention on October 22, 2025;

    b. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner for any purpose, absent exigent circumstances, without providing petitioner notice and a pre-detention hearing before an immigration judge;

    c. Petitioner's request for a temporary restraining order enjoining respondents from removing him to a third country without notice and an opportunity to be heard is DENIED without prejudice to a renewed motion for temporary restraining order if such issue becomes ripe for review;

2. Under the circumstances of this case, petitioner will not be required to post bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure;

3. Petitioner's motion to proceed under pseudonym (Doc. No. 3) is GRANTED; and

4. The parties are directed to meet and confer and, if possible, submit a joint proposed briefing schedule and hearing date with respect to any motion for a preliminary injunction no later than fourteen (14) days from the date of entry of this order.

IT IS SO ORDERED.

Dated: **November 21, 2025**

*Dale A. Drozd*
DALE A. DROZD
UNITED STATES DISTRICT JUDGE